UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MS TIGER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:24-cv-00349-SDN |
| | ) | |
| PAWS ANIMAL ADOPTION CENTER, et al., | ) ) ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER REVIEW
OF PLAINTIFF'S COMPLAINT**

Plaintiff alleges an animal shelter violated her federal constitutional rights by when it refused to return her pet dog. (Complaint, ECF Nos. 4, 12.) In addition to her complaint, Plaintiff filed an application to proceed without the prepayment of the filing fee (ECF No. 2), which application the Court granted. (Order, ECF No. 6.) Pursuant to the statute that governs matters filed without the prepayment of fees, a preliminary review of Plaintiff's complaint is appropriate. 28 U.S.C. § 1915(e)(2).

Following a review of Plaintiff's complaint, I recommend the Court dismiss the matter.

**FACTUAL ALLEGATIONS**[1]

Plaintiff is a resident of Arkansas who occasionally stays in Maine when organizing literary events. Defendant PAWS Animal Adoption Center (PAWS) is a nonprofit

---

[1] The facts are drawn from the complaint and the attachments to the complaint.

organization located in Camden, Maine. PAWS provides services related to the housing of lost or impounded animals for certain municipalities. Defendant Rockport, a municipality in Maine, has an animal shelter contract with PAWS. The seven individually named defendants are employees of or lawyers for PAWS or its insurer.

A male black and tan bloodhound named Rambo was born in November 2019. In February 2021, Crystal Davis of Aurora, Montana, acquired a purebred registration certificate for Rambo. Ms. Davis was listed on the certificate as the breeder and owner. In the summer of 2021, Ms. Davis gave Rambo to Plaintiff. Plaintiff changed the dog's name to Fabio.

On February 7, 2022, while Plaintiff was in Maine, Fabio got loose, was found in Lincolnville, Maine, and was brought to PAWS's animal shelter. On February 8, 2022, Plaintiff went to the shelter to retrieve Fabio, but an employee would not release Fabio to Plaintiff because the employee was not satisfied with the records Plaintiff provided to establish proof of ownership. Plaintiff alleges that she provided "vet and vaccination records" and was told she needed to provide more documentation.[2] Plaintiff asserts that PAWS suspected that Plaintiff was involved in "animal trafficking."

On the following morning, February 9, 2022, Plaintiff delivered additional documentation to PAWS, but one or more employees were still not satisfied with the

---

[2] Plaintiff attached to her complaint a copy of an Aurora, Montana veterinary clinic's February 2021 invoice to Ms. Davis indicating that "Rambo" had been given a rabies vaccine and a vaccine for distemper, adenovirus, parainfluenza, parvovirus, and leptospirosis. Plaintiff did not describe or include in her filing any other documents that she might have provided on the February 8 visit.

records, in part because the records were in the name of Plaintiff's company, Tiger Publishing. Plaintiff provided PAWS with veterinarian and vaccination records,[3] the purebred registration certificate, and a photograph of Fabio and another dog. In the afternoon, one of Plaintiff's friends, Joyce Mohr, sent an email to Defendant Meghan Austin, a manager for PAWS, and the animal shelter's director, Defendant Shelly Butler. The subject line read "Fabio – Eva Morris."[4] The message read:

> Hi Meghan and Shelly,
>
> You have a bloodhound – Fabio. He is my friend Eva's dog and she is at work so I'm reaching out to see if we can get Fabio back home.
>
> I know that Eva has been trying to sell Fabio and don't know all the details but from what I understand from Fabio is that there isn't any documentation about the sale. I've included the vet medical record for Fabio.
>
> I would like to come get Fabio this afternoon if it is possible to make that work. My cell number is [redacted] if one of you is available for a call.
>
> I know Fabio quite well and I am guessing he is all stressed out and would be good for everyone if we can get him out of the shelter today.
>
> Thank you,
>
> Joyce

(February 9 Email, ECF Nos. 4-10, 12-10.)

---

[3] The only other veterinary record Plaintiff attached to her complaint is a transaction history search performed on February 9, 2022, by a clinic in Thayer, Montana which reflected that "Tiger Publishing" had obtained dewormer medication for Fabio on November 10, 2021. Plaintiff does not describe or include in her filing any other veterinary records that she might have provided to PAWS at that time.

[4] Plaintiff attached government identification records showing that "Tiger" is her legal name, but she also uses "Eva Morris" as her pen name.

3

The next day, February 10, 2022, Ms. Mohr and another friend, David Coombs, went to the shelter to corroborate Plaintiff's ownership of Fabio. Between February 10 and February 14, 2022, Plaintiff sent emails to PAWS to provide additional documentation, and other individuals sent messages to PAWS through social media attesting to Plaintiff's ownership of Fabio.

On February 15, 2022, Plaintiff met with Defendants Austin and Butler and another PAWS employee. According to Plaintiff, Defendant Butler was confrontational and created new requests each time Plaintiff satisfied a prior request. Plaintiff produced an email from crystald2877@gmail.com stating, "I crystal Davis gave a Black and Tan male bloodhound to Eva Morris in early summer 2021 he was utd on all his shots at that time" and another email stating: "When I had him his name was Rambo." Defendant Butler asserted that the emails were not sufficient proof because anyone could draft such an email. Defendant Butler also stated that the photo of Fabio and another dog was not sufficient proof of ownership.

Plaintiff then produced a photograph showing her with Fabio, to which Defendant Butler replied, "This is the first picture we've seen with you and your dog." After Defendant Butler appeared to acknowledge that Plaintiff was Fabio's owner, Defendant Butler informed Plaintiff that Fabio could not be returned until he was licensed. When Plaintiff began to leave in frustration, Defendant Butler told her that if she left, PAWS would consider her to have abandoned the dog.

Plaintiff's time in Maine subsequently ended, and in June 2022, she filed a small claims court case against PAWS while she was in Arkansas. Plaintiff learned that Fabio had been neutered, adopted, and returned to the shelter multiple times, had become aggressive and bitten people on three occasions, was currently in the custody of a different animal shelter, and was scheduled to be euthanized. In August 2022, the other shelter released Fabio to Ms. Mohr. Plaintiff attached to her complaint a record showing that Fabio was licensed in Rockport on August 25, 2022, with Ms. Mohr listed as the owner. Plaintiff was ultimately reunited with Fabio. In Plaintiff's assessment, Fabio had lost weight and was no longer receptive to affection or eye contact.

In March 2023, while Plaintiff and Fabio were in Colorado, Fabio attacked Plaintiff. Plaintiff maintains that she suffered permanent injuries and emotional pain as the result of the attack. Plaintiff included in her filing a letter from a Colorado veterinarian recommending that Fabio be euthanized. Plaintiff also attached to her complaint a May 8, 2023, newspaper article describing a lawsuit Plaintiff filed through counsel in Maine Superior Court in April 2023 against PAWS based on her difficulties regaining custody of Fabio and her subsequent injuries.

## LEGAL STANDARD

28 U.S.C. § 1915 is designed to ensure meaningful access to the federal courts for individuals unable to pay the cost of bringing an action. When a party is proceeding pursuant to the statute, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim

on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "This is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).

## DISCUSSION

Plaintiff is evidently pursuing in state court legal claims involving the same conduct and injuries. (Exhibit Q, ECF No. 4-17.) Referencing the state court matter, Plaintiff alleges that the attorneys and insurer defendants have pursued burdensome depositions and

document requests and "caus[ed] this case to draw on over two and a half years, and counting . . . ." (Complaint ¶¶ 18, 20, 22, 24, 26, 28.)

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, but they are permitted to abstain under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), in limited exceptional circumstances for reasons of "wise judicial administration that counsel against duplicative lawsuits." *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010) (internal quotations omitted). To determine whether to abstain where duplicative actions exist, courts examine the following non-exhaustive factors:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 71–72 (1st Cir. 2005). Here, none of the factors weighs against abstention, and many of the factors weigh in favor of abstention, including factors 3, 4, 5, 6, 7, and 8. Plaintiff has not raised any other circumstances that weigh against abstention or in favor of a stay rather than dismissal.[5]

---

[5] The district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706–07 (1997). "[F]ederal courts possess the inherent power to stay proceedings for prudential reasons," including the pendency of parallel proceedings. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). Whether the existence of a parallel proceeding warrants the stay of a proceeding requires consideration of various interests and is a case-specific inquiry. *Id.* at 78. "Generally, in evaluating whether to issue a stay, a court will consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party

The doctrine of *Colorado River* abstention militates against the exercise of jurisdiction where a party attempts to raise claims in federal court based on the party's dissatisfaction with the course of a parallel state court case:

> In our view, it would be unthinkable that every time a state . . . court [party] became dissatisfied with that court's provisional resolution of some issue and there was diversity of citizenship, it could rush over to the federal courthouse in the hope of obtaining a more favorable determination. Such a practice, if ordinarily permitted, would complicate and fragment the trial of cases, as well as cause friction between state and federal courts.

*Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309–10 (1st Cir. 1986). Because Plaintiff apparently asserts claims here based on essentially the same facts she previously and voluntarily chose to pursue in state court, and because Plaintiff seeks relief based on the events that have occurred in connection with the state court proceedings and which could be raised within the state forum, abstention and dismissal are warranted.

Even if the Court did not abstain, dismissal would still be warranted because Plaintiff has failed to state a claim within this Court's jurisdiction. The Court's jurisdiction over any possible federal claim based on a constitutional deprivation would be governed by 42 U.S.C. § 1983, which must involve the conduct of a state actor. Plaintiff did not include any allegations regarding Defendant Rockport, which is a governmental entity. Municipalities are only liable under § 1983 for their official policies and customs. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). Because Plaintiff did

---

without a stay; and (3) judicial economy." *Good v. Altria Grp., Inc.*, 624 F. Supp. 2d 132, 134 (D. Me. 2009).

not assert that any of the alleged violations occurred because of an official Rockport policy or custom, Plaintiff has failed to state an actionable federal claim against the municipality.

Plaintiff also has not alleged a federal claim against the individuals named as defendants. The individual defendants are private citizens and not public officials. Plaintiff acknowledges that PAWS is a private nonprofit organization, not a governmental entity. Whether Plaintiff has satisfied the state action element necessary for a federal claim depends on whether any of the conduct of the private actors can be deemed to be state action.

The First Circuit has recognized three tests to determine whether nominally private action can be deemed state action: the state compulsion test, the nexus/joint action test, and the public function test. *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 5 (1st Cir. 2005). The First Circuit has summarized the three state action tests as follows:

> Under the state compulsion test, a private party is fairly characterized as a state actor when the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982). The nexus/joint action test provides that a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]." *Bass v. Parkwood Hosp.,* 180 F.3d 234, 242 (5th Cir.1999) (internal quotation marks omitted) (first alteration in original); *see Perkins* [*v. Londonderry Basketball Club*]*,* 196 F.3d [13] at 21 [(1st Cir. 1999)]. And, in accordance with the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been "traditionally the exclusive prerogative of the State." *Blum,* 457 U.S. at 1005 (internal quotation marks omitted).

Plaintiff has not alleged that any public officials coerced or directed the private actors not to return Fabio. Furthermore, courts have generally not found that animal shelters or their employees satisfy the nexus or exclusive function tests unless they coordinate closely with animal control officers or police or are authorized to exercise the powers more typically given to animal control officers, such as the power to investigate and issue citations or search and seize animals from their owners.[6] Plaintiff does not allege who brought Fabio to the animal shelter. Plaintiff, however, did not mention any animal control officers or assert that anyone searched or seized her property.[7]

Although Plaintiff alleges that the contract between PAWS and Defendant Rockport establishes state action, "[a] private party cannot be transformed into a state actor simply because it is paid with government funds for providing a service." *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The terms of the contract do not support a finding that PAWS qualifies as a state actor, and because Plaintiff does not provide any facts that would

---

[6] *Compare Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 351–54 (E.D.N.Y. 2013) (finding no state action when nonprofit organization only maintained an animal shelter and did not investigate or seize animals); *and Shell v. Ferry Cnty.,* No. 2:16-CV-00021-SAB, 2017 WL 579898, at *4 (E.D. Wash. Feb. 13, 2017) (finding no state action for volunteer animal shelter that lacked any enforcement power and only occasionally worked with the sheriff to manage the stray population); *with Fabrikant v. French*, 691 F.3d 193, 205–08 (2d Cir. 2012) (finding state action when SPCA employees investigated, obtained a search warrant, and seized dogs); *and Vawser v. Updegrove*, No. 4:06CV3217, 2009 WL 1383264, at *6 (D. Neb. May 14, 2009) (finding state action because human society and its employees were authorized to and did obtain a search warrant and worked closely with police to seize evidence and issue citations).

[7] Maine law recognizes the distinction between animal control officers and animal shelters caring for lost or stray animals. *See* 7 M.R.S. § 3949. The State requires towns and cities to designate an animal shelter to care for lost or stray animals but generally prohibits municipalities from contracting with animal shelters to provide the duties of animal control officers. Plaintiff does not allege that any of the defendants acted as animal control officers.

permit a finding of an exclusive function or joint participation with government officials, Plaintiff's § 1983 claims fail.

Even if Plaintiff had sufficiently alleged state action, her federal claims would fail because the alleged conduct does not amount to a constitutional violation. The essence of Plaintiff's claims is that for several days, PAWS and its employees did not accept her documentation as proof of ownership of Fabio, and that after they accepted that she was Fabio's owner, they imposed other requirements before they would relinquish Fabio to her, which requirements evidently included licensing and/or other fees. Plaintiff has not alleged facts or cited any authority, however, (a) that suggests it is unreasonable or unlawful for a shelter to require proof of ownership before the shelter allows a person to take an animal, or (b) that demonstrates it is unconstitutional or atypical to impose fees for the animal's care and licensing. *See, e.g.*, *Stanley v. Kirkpatrick*, 357 S.C. 169, 173 n.3 (2004) (noting the various fees that an owner must pay before their animal is returned from the pound); *Harvey v. Morabito*, No. CIV.9:99CV1913HGM/GL, 2003 WL 21402561, at *5 (N.D.N.Y. June 17, 2003) (discussing requirement that an owner must comply with state dog licensing laws before the owner's pet is returned). Plaintiff's claims regarding Defendants' motives consist of labels and conclusory allegations, which are insufficient to support a plausible inference of intentional conduct or a conspiracy to harm Plaintiff or take her property. A factfinder reviewing the documents that Plaintiff provided to Defendants could not reasonably find the type of arbitrary and unreasonable conduct

necessary to establish a violation of the Fourth or Fourteenth Amendments even if Plaintiff sufficiently alleged state action.[8]

## CONCLUSION

Based on the foregoing analysis, after a review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915, I recommend the Court dismiss the matter.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 11th day of February, 2025.

---

[8] Plaintiff styled her complaint as a section 1983 "Civil Rights Complaint." (Complaint at 1.) Consistent with that characterization, Plaintiff asserts jurisdiction based on 28 U.S.C. § 1331, which provides that the Court has jurisdiction over "civil claims arising under the Constitution, laws, or treaties of the United States." Plaintiff entitles her fourth count as "42 U.S.C. 1983 Gross Negligence" and her fifth count at "42 U.S.C. 1983 Fraud." Plaintiff's complaint can arguably be construed to attempt to allege two state law claims. Because there are no actionable federal claims, to the extent Plaintiff's complaint is construed to include state law claims, an exercise of supplemental jurisdiction over Plaintiff's state law claims is not appropriate. In addition, although Plaintiff alleges that she resides in Arkansas and all the defendants are citizens of states other than Arkansas, Plaintiff has not invoked the Court's diversity jurisdiction and has not alleged sufficient facts to establish that her claims are within the Court's diversity jurisdiction. For instance, it is not obvious from the filing, and Plaintiff does not allege that her claim satisfies the monetary threshold for diversity jurisdiction. *See Woo v. Spackman*, 988 F.3d 47, 53 (1st Cir. 2021) ("[A] party asserting the existence of diversity jurisdiction under 28 U.S.C. § 1332 must allege facts sufficient to show that the requirements for such jurisdiction are satisfied in the particular case.").